## A. H. SOLOMON v. THE STATE.

### No. 4859. Decided April 24, 1918.

**Burglary—Private Residence—Circumstantial Evidence—Recent Posses-
sion.**

Where, upon trial of burglary of a private residence in the night-time, the
evidence was entirely circumstantial and the proof rested upon the possession
of property recently stolen from the burglarized house, and the evidence failed
to show that said property was in possession of defendant, but upon the hear-
say evidence that he had received the same from another party, and there was
no other evidence tending to connect the defendant with the commission of the

offense, the conviction could not be sustained.  Following Oliver v. State, 69 Texas Crim. Rep., 263, and other cases.

Appeal from the District Court of Williamson.   Tried below before the Hon. James R. Hamilton.

Appeal from a conviction of burglary of a private residence in the night-time; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. F. Taulbee,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of recent possession:  Knox v. State, 11 Texas Crim. App., 148; Goens v. State, 35 Texas Crim. Rep., 73; Hodge v. State, 41 id., 229.

MORROW, Judge.—This is a conviction for the offense of burglary of a private residence at night-time.

The evidence shows without contradiction that the private residence of Hiram Hunt was burglarized on the night of about April 4, 1917, and that the property taken therefrom was two bedspreads and three pillows.   These articles were found soon thereafter in possession of Ethel Robinson, a negro girl.   It was her testimony alone upon which the State relies to connect the appellant with the offense.   She appears to have been sick at the time from a malady affecting her leg, and shortly after the occurrence had gone to Oklahoma, where her leg was amputated. She had also been on the poor farm for some offense which is not named. She testified that she had seen the defendant prior to the time the offense was committed, but that she had never had any transaction with him; that he had never been to her house, and that she had never been with him at any place except upon the occasion described in her testimony. That on the night of the offense she was asleep and was sick; that staying at the house was a negro man about twenty-three or twenty-four years of age called "Peaches"; that she woke up and found "Peaches" standing near her bed; that the window was open and appellant was near the window outside the house; that when she woke up "Peaches" called her and said there were some things for her, and she looked and saw the things.   She asked where he got them, and he said, "Mr. Dick, or somebody, gave them to him."   At that time "Peaches," the negro man, was standing by her bed and the other man was out by the window about two steps away.   That she spoke to the man at the window, appellant, and asked him where he got those goods, and "he said another man gave them to him to hold for him.   And I said, 'Who was he?' and he said he didn't know who it was.   'I don't know who it was, but somebody walked around the corner of my house'; 'I don't know who it was.' " And he said, "If anybody comes here asking for those things, you give them to him; if they don't you just keep them.'   The defendant said that."   State's counsel asked this question:   "Is this defendant the man who left those things there?   A.   No, sir; he didn't leave them with

me; this colored boy, he gave them to me." State's counsel stated that he was surprised at the witness' testimony, and asked permission to impeach her or lay a predicate therefor by making an inquiry as to her testimony before the grand jury. The court granted this. The district attorney stated, in this connection, that the witness had made an entirely different statement on the stand from that made by her in the grand jury room; that her statement was an entire surprise and nothing like her former statement. The court having given permission to lay the predicate, the district attorney asked this question: "I will ask you if you didn't testify in the grand jury room that this man brought those things there and gave them to you and told you that he got them from a negro? A. No, sir; I didn't tell you that he gave them to me." Another question: "Didn't you tell me that this morning in my office in the presence of Mr. Young? A. No, sir; I didn't say that." In this connection the district attorney asked her if she was not on the poor farm and if appellant did not go out and pay her fine and get her. She replied that he did come out there, but that her father gave him the money to pay the fine. On cross-examination she said that the negro Fred Loveless, called "Peaches," had gone soon after the burglary, and she had not seen him since; she was informed that he stayed a week or two before leaving.

The State's case against appellant rests wholly upon circumstantial evidence. This was recognized in the trial court in an appropriate charge. Summarized, it is that the property recently stolen was found in the possession of the witness Ethel Robinson. She accounted for her possession by her statement that she got it from the negro man called "Peaches," and that he said he got it from appellant, and appellant said he got it from another person, and that she saw another person go around the corner of the house. The rule laid down by Mr. Branch, in his Annotated Texas Penal Code, section 2346, that a verdict resting upon proof of the possession by the accused of property recently stolen from the burglarized house will not be set aside unless clearly wrong where the other facts in evidence justify the jury in believing that the explanation of possession of the property is untrue, is invoked by the State. It can hardly be said to apply for the reason that the recently stolen property was not found in the possession of appellant. His connection with it rests alone upon the statement of the witness Ethel Robinson to the effect that "Peaches" said he got it from appellant, and that appellant said he got it from someone else. The absence of the witness "Peaches" is a circumstance weakening the State's case, being consistent with the innocence of appellant and the guilt of another who was proved in possession of the stolen goods. If he fled, as is intimated, and can not be produced as a witness, his flight would tend to support the presumption of innocence with which the law surrounds the appellant. If he did not flee, the failure of the State to produce him as a witness is to the same effect. If the rule of the possession of recently stolen property would

be extended to apply to the appellant by reason of his statement, that he had gotten the things from another man, it would rest upon the State to disprove the truth of his explanation of his possession. Ross v. State, 16 Texas Crim. App., 554; Oliver v. State, 69 Texas Crim. Rep., 263, 153 S. W. Rep., 309. On this point the State's witness declares, in connection with her assertion that appellant made the statement that he had gotten the things from another, that she saw another man go around the corner of the house, thus tending by her testimony to corroborate rather than to disprove the explanation which she says that appellant made. Aside from the testimony of Ethel Robinson, there is no evidence tending to connect the appellant with the commission of the offense. He was a white man; he was not shown to have had any intimacy with either the witness Ethel Robinson or the negro man called "Peaches," nor are there any circumstances showing a motive for burglarizing the house in order to give the stolen goods to the witness Ethel Robinson, nor any circumstances bringing him in proximity to the burglarized premises. Under the facts we think it would be clearly wrong to sustain the conviction, and that the trial court erred in refusing to grant the motion for a new trial.

The judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, Judge, absent.